Christopher L. FLOWERS, Petitioner

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 9, 2009.

Decided Jan. 8, 2010.

Joseph M. Sembrot, Harrisburg, for petitioner.

Alan M. Robinson, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

Raising a novel issue, Christopher L. Flowers (Flowers) asks this Court to review an order of the Pennsylvania Board of Probation and Parole (Board) recommitting him as a technical parole violator to serve twelve months' backtime. Flowers challenges the Board's determination that he violated his parole by failing to refrain from assaultive behavior when a dog under his control attacked his parole officer. We affirm.

On September 14, 2004, the Court of Common Pleas of Dauphin County sentenced Flowers to concurrent terms of imprisonment of four to eight years for possession with intent to deliver a controlled substance, possession of a prohibited firearm, carrying a firearm without a license, flight to avoid apprehension, and escape from detention. At the time of his conviction, Flowers's minimum sentence expiration date was September 14, 2008, and his maximum sentence expiration date was September 14, 2012.

On September 15, 2008, the Board released Flowers on parole with a number of conditions. Relevant here, general condition 5C required Flowers to "refrain from any assaultive behavior."

Four days later, the Board issued a Warrant to Commit and Detain Flowers based on an incident occurring at his approved residence. The Board charged Flowers with a technical violation of his parole, condition 5C. A Board hearing ensued.

At hearing, during which Flowers was represented by counsel, Flowers's parole officer, Carla Smith, testified that in anticipation of Flowers's release, she conducted a home plan investigation. During the home plan investigation, the parole officer observed three dogs [1] penned up behind a sliding glass door in an enclosed porch area of the home. The parole officer informed the home provider that the dogs must be locked up when she conducted her home visits. The home provider agreed.

The parole officer further testified that on the day of Flowers's release, she met with him at the parole office to review the conditions of his parole. During the meeting, the parole officer informed Flowers that the dogs needed to be penned up when she conducted her home visits. Flowers agreed.

Two days later, the parole officer made her initial home visit. Flowers was not aware that a home visit was planned.

---

[1] The dogs were described as Shar Pei mixes that weighed approximately forty to sixty pounds. Flowers' home provider was a veterinary technician and owned only one of the dogs in her home. There was no evidence in the record that the dogs had a prior history of attacking people.

Flowers met the parole officer outside the front door of his home. The parole officer noticed that the dogs were lunging at the metal screen door, barking, and growling at her. As a result, the parole officer told Flowers to go inside the home and put the dogs away. The parole officer testified that as she waited for Flowers to pen the dogs, she had to physically push on the door from the outside to keep the dogs from driving the door open.

After Flowers pulled the dogs away from the screen door, he told the parole officer it was "okay" for her to enter the house. Notes of Testimony (N.T.), 10/24/08, at 16; Certified Record (C.R.) at 47a. However, when the parole officer entered the residence, she saw that one of the three dogs had not been penned. The parole officer testified she told Flowers she was uncomfortable with the dog being loose and she was afraid of it even though it acted friendly.

Despite the parole officer's concerns with the dog that was already loose in the house, Flowers told her that he wanted to release a second dog so that the dog would have an opportunity to become familiar with her. The parole officer demanded that Flowers not let any more dogs loose into the house since she was already uncomfortable with the first dog.

Flowers, however, insisted the "dogs are fine." N.T. at 16; C.R. at 47a. He then opened the sliding glass door and released the second dog into the house. The dog instantly charged the parole officer, knocking her over into a chair. The dog then bit at the officer's hair, missed her head, and latched on to her upper arm. Flowers pulled the dog off the parole officer, allowing her to escape the house.

After the attack, Flowers followed the parole officer outside and asked her to return to the house. She refused to reenter the residence. Instead, she called the police. The parole officer further testified that Flowers feared what would happen to him as a result of the attack. Flowers asked her not to leave. Nevertheless, the parole officer left for the hospital, where she received five stitches to close three puncture wounds. The parole officer also testified that as a result of the attack she missed two days of work and is now petrified of animals.

■ Accepting the testimony of the parole officer,[2] the Board concluded Flowers violated condition 5C of his parole and recommitted him to serve twelve months' backtime. Flowers filed a timely petition for administrative relief with the Board. The Board, however, denied the petition. This appeal followed.[3]

■ At the outset, we note this case presents an issue of first impression: does assaultive behavior include an attack by a dog under a parolee's control?[4] Although

2. The Board, as the ultimate fact-finder, evaluates witness credibility, resolves conflicts in the evidence, and assigns evidentiary weight. *Sigafoos v. Pa. Bd. of Prob. & Parole,* 94 Pa. Cmwlth. 454, 503 A.2d 1076 (1986). We leave the sufficiency of the evidence to the Board's discretion, and we will not interfere with the Board's finding of a technical parole violation if it is supported by substantial evidence. *Hawkins v. Pa. Bd. of Prob. & Parole,* 88 Pa.Cmwlth. 547, 490 A.2d 942 (1985). In addition, the Board has broad discretion in parole matters and its interpretation of its own regulations will control unless clearly erroneous. *Seyler v. Pa. Bd. of Prob. & Parole,* 97 Pa.Cmwlth. 302, 509 A.2d 438 (1986).

3. Our review in a parole revocation action is limited to determining whether the findings were supported by substantial evidence, whether constitutional rights were violated, or whether the Board committed an error of law. *Rosenfelt v. Pa. Bd. of Prob. & Parole,* 130 Pa.Cmwlth. 564, 568 A.2d 1347 (1990).

4. *See generally* Fern L. Kletter, Annotation, *Dog as Deadly or Dangerous Weapon for Purposes of Statutes Aggravating Offenses Such as Assault and Robbery,* 124 A.L.R.5th 657 (2004).

the Board's regulations require that parolees refrain from assaultive behavior, the regulations do not provide a definition of "assault." 37 Pa.Code § 63.4(5)(iii) (relating to general conditions of parole). However, this Court recognizes "[a]ssaultive behavior encompasses a broader category of actions than would the crime of assault, and thus actions that would not constitute a crime may nonetheless be sufficient grounds for revocation of parole." *Jackson v. Pa. Bd. of Prob. & Parole*, 885 A.2d 598, 601 (Pa.Cmwlth.2005).

Moreover, in the context of parole violations, assaultive behavior is defined under the ordinary dictionary definition of assault. *Moore v. Pa. Bd. of Prob. & Parole*, 95 Pa.Cmwlth. 531, 505 A.2d 1366 (1986). Webster's Collegiate Dictionary, 73 (11th ed. 2003) defines assault as: "**1 a:** [A] violent physical or verbal attack .... [and] **2 a:** [A] threat or attempt to inflict offensive physical contact or bodily harm on a person (as by lifting a fist in a threatening manner) that puts the person in immediate danger of or in apprehension of such harm or contact."

Flowers asserts the Board erred in determining he violated condition 5C of his parole. Flowers submits he opened the sliding glass door to let the dogs get to know Smith and, thus, his actions were well intentioned. Flowers contends the dog bite was an accident, and an accident cannot be included within the definition of assaultive behavior. Essentially, Flowers argues that in order for the Board to conclude that he engaged in assaultive behavior the Board must determine that he intended the dog to attack the parole officer.

For reasons set forth below, we conclude the Board need not find that a parolee intended a dog under his control to attack. We also conclude that substantial evidence supports the Board's determination that Flowers engaged in assaultive behavior.

Finally, we note that our conclusions are consistent with public policy.

 In *Seyler v. Pennsylvania Board of Probation and Parole,* 97 Pa.Cmwlth. 302, 509 A.2d 438 (1986), this Court held a parolee engaged in assaultive behavior when he disciplined his stepson by striking him with a belt. In Pennsylvania, parents are permitted to use corporal punishment to discipline their children as long as the punishment is not malicious. On appeal, the parolee argued the Board had to find he acted with malicious intent when he struck his stepson in order to conclude he engaged in assaultive behavior. This Court, however, disagreed. The Court concluded "the burden of proving malicious intent belonged to the police, Children and Youth Services, and the stepson's school. The [B]oard's role was to determine whether the petitioner had violated a general condition of his parole by failing to refrain from assaultive behavior." *Id.* at 440.

The Court explained it is well within the broad discretion of the Board to demand strict compliance with the terms of its conditions, and to punish for any noncompliance, regardless of the reasons therefore. *Id.* Accordingly, the *Seyler* Court rejected the parolee's argument that the Board must first determine he acted with malicious intent. As a result, the Court affirmed the Board's determination that the parolee violated his parole for failing to refrain from assaultive behavior.

As in *Seyler,* it was not the Board's burden to determine whether Flowers intended the dog to attack the parole officer; rather, it was the Board's duty to determine whether Flowers failed to refrain from assaultive behavior. *Id.*; 1 Pa.C.S. § 1903. We therefore reject Flowers's legal argument that the Board must determine he intended the dog to attack.

■ Moreover, from a factual viewpoint, this Court recognizes that knowingly placing an individual in the apprehension of or immediate danger of bodily harm constitutes assaultive behavior. Thus, the absence of physical contact by the parolee does not preclude the Board from concluding a parolee's actions constitute assaultive behavior. *See Moore* (holding a parolee's use of an obscene letter and obscene telephone call threatening to rape the complaining witness constituted assaultive behavior); *see also Dunkleberger v. Pa. Bd. of Prob. & Parole,* 132 Pa.Cmwlth. 600, 573 A.2d 1173 (1990) (holding a parolee's threat to kill his pregnant girlfriend if anything happened to their unborn child constituted assaultive behavior even though the threat was not acted upon); *Tyson v. Pa. Bd. of Prob. & Parole,* 84 Pa.Cmwlth. 326, 479 A.2d 52 (1984) (holding a parolee engaged in assaultive behavior based upon an allegation by affiant that he had threatened her with a gun).

Here, the parole officer told Flowers that she was uncomfortable with the dogs being loose, and she requested the dogs be penned during her home visits. N.T. at 11, 13, 16; C.R. at 42a, 44a, 47a. In addition, the parole officer testified she was afraid of the dog that was already loose in the house. N.T. at 32; C.R. at 63a. While she was in Flowers's home, she requested several times that he not release the second dog. N.T. at 16–17; C.R. 47a–48a.

Furthermore, Flowers had complete control over the release of the dog that attacked the parole officer. N.T. at 17–18; C.R. at 48a–49a. By releasing the second dog, Flowers disregarded the officer's stated fear of the dogs and numerous requests to keep the second dog penned. N.T. 37; C.R. at 68a. As a result of his behavior, Flowers knowingly put the parole officer in apprehension of and in immediate danger of bodily harm. N.T. 17–18; C.R. 48a–49a. Ultimately, the dog attacked the parole officer, causing bodily harm. *Id.*

Because physical contact by the parolee is not required, there is substantial evidence in the record here to support the Board's determination that Flowers's conduct constituted assaultive behavior.

Finally, our conclusion is consistent with public policy, as set forth in the Dog Law.[5] This statute provides criminal penalties for certain dog attacks.

Under the Dog Law, an "owner" includes persons with a property right in a dog *and* "every person who keeps or harbors such dog or has it in his care, and every person who permits such dog to remain on or about any premises occupied by him." Section 102 of the Dog Law, 3 P.S. § 459–102 ("Definitions"). In addition, a "dangerous dog" includes a dog with a propensity for unprovoked attacks on humans, which may be proven by a single unprovoked attack. Section 502–A(a) of the Dog Law (relating to summary offense of harboring a dangerous dog).[6] Furthermore, "[i]f a dangerous dog, through the intentional, reckless or negligent conduct of the dog's owner, attacks a person ... the dog's owner is guilty of a misdemeanor of the second degree." Section 505–A(b) of the Dog Law (relating to attacks by a dangerous dog).[7]

In summary, the Board's conclusion that Flowers failed to refrain from assaultive behavior is not clearly erroneous, is supported by substantial evidence, and is con-

---

**5.** Act of December 7, 1982, P.L. 784, *as amended,* 3 P.S. § 459–101—459–1205.

**6.** *Added by* the Act of May 31, 1990, P.L. 213, 3 P.S. § 459–502–A(a)(1)(i).

**7.** *Added by* the Act of May 31, 1990, P.L. 213, 3 P.S. § 459–505–A(b).

sistent with public policy. Accordingly, we affirm.

Judge COHN JUBELIRER concurs in the result only.

## ORDER

**AND NOW,** this 8th day of January, 2010, the order of the Pennsylvania Board of Probation and Parole is **AFFIRMED.**