IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Anderson,               :
             Petitioner        :
                                  :
            v.                    :
                                  :
Pennsylvania Parole Board,      :      No. 1248 C.D. 2020
            Respondent      :      Submitted: August 6, 2021


BEFORE:     HONORABLE MARY HANNAH LEAVITT, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                                FILED: October 20, 2021


Thomas Anderson (Anderson) petitions this Court for review of the Pennsylvania Parole Board's (Board) June 3, 2020 decision denying him administrative relief. Anderson presents one issue for this Court's review: whether substantial evidence supported the Board's conclusion that Anderson's statement constituted assaultive behavior sufficient to rescind his automatic reparole. After review, this Court affirms.

Anderson is an inmate currently incarcerated at the State Correctional Institution (SCI) at Rockview. On October 16, 1998, Anderson was sentenced to 5 to 20 years of incarceration for robbery and aggravated assault. *See* Certified Record (C.R.) at 1. On August 3, 2012, Anderson was sentenced to 2 to 4 years of incarceration for aggravated assault with injury to an officer. *See id.* Accordingly, at his initial release on parole, his aggregated sentence was 7 to 24 years of incarceration (Original Sentence). *See* C.R. at 2. Following his initial release on parole from his Original Sentence, the Board recommitted Anderson as a technical parole violator (TPV) to serve 6 months of backtime. *See* C.R. at 3. On May 28,

2017, the Board automatically reparoled Anderson from his Original Sentence. *See* C.R. at 7.

Effective October 7, 2017, the Board declared Anderson delinquent for several technical parole violations. *See* C.R. at 16-17. On October 16, 2017, Anderson admitted to the violations and waived his right to a violation hearing. *See* C.R. at 23. By decision rendered November 30, 2017 (mailed December 12, 2017), the Board recommitted Anderson as a TPV to serve 9 months of backtime. *See* C.R. at 37-39. The Board's November 30, 2017 decision stated that Anderson would be "reparoled automatically without further action of the Board on [April 14, 2018,] . . . provided [he did] not [] commit a disciplinary infraction involving assaultive behavior[.]" C.R. at 38.

On January 16, 2018, while incarcerated at SCI-Smithfield, Anderson told staff: "If I see [Corrections Officer (CO) Husick] on the walkway, I'm going to punch him in his f[***]ing mouth." C.R. at 41; *see also* Supplemental C.R. (Suppl. C.R.) at 9A. As a result, the Department of Corrections (DOC) charged Anderson with, *inter alia*, a Misconduct for #15 Threatening an Employee (Misconduct). *See* C.R. at 41; *see also* Suppl. C.R. at 9A. DOC conducted a hearing on January 29, 2018, during which Anderson pled guilty to the Misconduct, and DOC imposed 30 days of disciplinary confinement for his infraction. *See* C.R. at 41; *see also* Suppl. C.R. at 10A.

The Board learned of Anderson's Misconduct on January 30, 2018. *See* Suppl. C.R. at 1A-2A. By Board action recorded on March 30, 2018 (mailed April 9, 2018), based solely on the documentary evidence,[1] the Board modified its

---

[1] The Board's Automatic Reparole Rescission Report (Rescission Report) reflects: "The Board accepts DOC's finding on the [M]isconduct for threatening staff, which constitutes assaultive behavior. Because [] Anderson committed a disciplinary infraction involving assaultive behavior, the Board is justified in denying him automatic reparole." C.R. at 43.

2

November 30, 2017 action by deleting the April 14, 2018 automatic reparole portion due to the Misconduct.[2] *See* C.R. at 40-44.

On April 26, 2018, Anderson filed an Administrative Remedies Form challenging the Board's March 30, 2018 decision, arguing that his declaration regarding CO Husick was not an assault, and that his due process rights were violated. *See* C.R. at 45. By decision mailed June 3, 2020, the Board upheld its March 30, 2018 decision, ruling that, since Anderson committed assaultive behavior, the Board was authorized to rescind Anderson's automatic reparole. Anderson appealed to this Court.[3]

Preliminarily, Section 6138(d) of the Prisons and Parole Code (Parole Code) states, in pertinent part:

> A [TPV] recommitted to a[n] [SCI] . . . under subsection (c) [(relating to [TPVs])] shall be recommitted as follows:
>
> . . . .
>
> (3) Except as set forth in paragraph (4) or (5), the offender shall be recommitted for one of the following periods, at which time the offender shall automatically be reparoled without further action by the [B]oard:
>
> . . . .
>
> (ii) For the second recommitment under this subsection for the same sentence, a maximum of nine months.

---

[2] The Board's decision specified that Anderson would be listed for reparole review on or after January 16, 2019. *See* C.R. at 44.

[3] On December 10, 2020, Anderson filed a Petition for Allowance of Review *Nunc Pro Tunc*, which this Court granted on December 29, 2020.

This Court's review of an automatic reparole rescission action "is limited to determining whether the findings were supported by substantial evidence, whether constitutional rights were violated, or whether the Board committed an error of law." *Lockett v. Pa. Bd. of Prob. & Parole*, 141 A.3d 613, 615 n.1 (Pa. Cmwlth. 2016) (quoting *Flowers v. Pa. Bd. of Prob. & Parole*, 987 A.2d 1269, 1271 n.3 (Pa. Cmwlth. 2010)).

. . . .

(5) The time limit under paragraph (3) shall not be applicable to an offender who:

(i) committed a disciplinary infraction involving assaultive behavior . . . [.]

61 Pa.C.S. § 6138(d).[4] Thus, pursuant to Section 6138(d)(5)(i) of the Parole Code, Anderson was to be automatically reparoled on April 14, 2018, as long as he did not commit a disciplinary infraction involving *assaultive behavior* before that date.

Anderson argues that the Board erred by rescinding his automatic reparole for assaultive behavior, because he made a conditional statement to a third party, and there was no record evidence that CO Husick knew of the statement or had a reasonable apprehension of bodily harm.

Neither the Parole Code nor the Board's Regulations define *assaultive behavior*. Notwithstanding, this Court has ruled that,

> in the context of parole violations, assaultive behavior is defined under the ordinary dictionary definition of assault. *Moore v. Pa. Bd. of Prob. & Parole*, . . . 505 A.2d 1366 ([Pa. Cmwlth.] 1986). Webster's Collegiate Dictionary, 73 (11th ed. 2003) defines assault as: '1 a: [A] violent physical or verbal attack . . . [and] 2 a: [A] threat or attempt to inflict offensive physical contact or bodily harm on a person (as by lifting a fist in a threatening manner) that puts the person in immediate danger of or in apprehension of such harm or contact.'
>
> *Flowers v. [Pa.] Bd. of Prob. [&] Parole*, 987 A.2d 1269, 1271-72 (Pa. Cmwlth. 2010). Accordingly, a threat that places an individual in apprehension of bodily harm can

---

[4] *See also* Section 63.4(5)(iii) of the Board's Regulations, 37 Pa. Code § 63.4(5)(iii) (If parole is granted, the parolee shall be subject to "[r]efrain[ing] from [] assaultive behavior."). Historically, this provision has appeared in Board parole conditions as general condition 5c. *See Malarik v. Pa. Bd. of Prob. & Parole*, 25 A.3d 468 (Pa. Cmwlth. 2011); *see also Flowers*; *Dunkleberger v. Pa. Bd. of Prob. & Parole*, 573 A.2d 1173 (Pa. Cmwlth. 1990); *Moore v. Pa. Bd. of Prob. & Parole*, 505 A.2d 1366 (Pa. Cmwlth. 1986).

4

constitute assaultive behavior . . . . Specifically, this Court has deemed that the sending of letters by a parolee to an individual threatening mutilation and rape constitutes assaultive behavior that may result in a parolee's recommitment. *Moore*. This Court has also reached such a conclusion in the absence of specific testimony that the victim was, in fact, in apprehension of bodily harm. *See Dunkleberger v.* [*Pa.*] *Bd. of Prob.* [*&*] *Parole*, . . . 573 A.2d 1173 ([Pa. Cmwlth.] 1990) [(wherein a parolee's mere threat to kill his pregnant girlfriend if anything happened to their unborn child constituted assaultive behavior)]; [*see also*] *Moore*. In *Moore*, this Court recommitted a parolee based upon his threat of mutilation and rape because "[s]uch conduct would clearly evoke a reasonable apprehension of bodily harm in any individual." *Id.* . . . at 1367.

*Malarik v. Pa. Bd. of Prob. & Parole*, 25 A.3d 468, 470 (Pa. Cmwlth. 2011); *see also Lockett v. Pa. Bd. of Prob. & Parole*, 141 A.3d 613 (Pa. Cmwlth. 2016).[5] Moreover, "this Court [has] deemed verbal threats assaultive behavior . . . even when the target of the threat, just as in this case, did not receive the threat first[]hand." *Malarik*, 25 A.3d at 470 (wherein this Court held that a parolee's writing and mailing of a letter soliciting donations from third parties for the purpose of kidnapping and executing a judge constituted assaultive behavior); *see also Butterfield v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth. No. 1030 C.D. 2010, filed Oct. 28, 2010);[6] *Commonwealth v. Simmons*, 56 A.3d 1280 (Pa. Super. 2012), *aff'd*, 91 A.3d 102 (Pa. 2014).

---

[5] This Court acknowledges that the *Malarik*, *Flowers*, *Dunkleberger*, *Moore*, and *Butterfield v. Pennsylvania Board of Probation & Parole* (Pa. Cmwlth. No. 1030 C.D. 2010, filed Oct. 28, 2010) Courts reviewed Board parole violation determinations wherein parolees violated general parole condition 5c (i.e., refrain from assaultive behavior), rather than rescission determinations under Section 6138(d)(5)(i) of the Parole Code. However, finding them sufficiently similar, this Court has applied the condition 5c analysis in cases invoking Section 6138(d)(5)(i) of the Parole Code. *See Lockett*.

[6] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Butterfield* is cited herein for its persuasive value.

In *Butterfield*, Butterfield was paroled from an SCI subject to numerous conditions, including that he reside in a group home and refrain from assaultive behavior. Butterfield complained to the group home security monitor that the group home had too many rules and declared that if he saw the group home's clinical supervisor Ed Saadi (Saadi) in the street he would "shoot him in the head." *Butterfield*, slip op. at 2. Saadi was not present when Butterfield made the statement. The Board nevertheless recommitted Butterfield as a TPV for assaultive behavior. On appeal to this Court, Butterfield argued, as Anderson does in this case, that his statement did not constitute assaultive behavior because he did not have a physical encounter with Saadi, nor did he do anything else that would cause Saadi to have a reasonable apprehension of bodily harm. This Court affirmed the Board's decision, explaining:

> [Butterfield's] statement clearly show[ed] that [Butterfield], while not actually committing assault, was "inclined toward or disposed to" commit assault. It could easily be interpreted as a threat to murder Saadi if the opportunity ever arose once [Butterfield] left the group home. Such a statement is sufficient to constitute "assaultive behavior."

*Id*. at 4.

> Here, the Board concluded:

> [Section 6138(d)(5) of the Parole Code] provides that automatic reparole does not apply to [TPVs] who commit disciplinary infractions involving an assaultive misconduct. [*See*] 61 Pa.C.S. § 6138(d)(5). Because [Anderson] incurred a qualifying misconduct under the statute, the Board acted within its authority by rescinding automatic reparole in this case. Moreover, the Board acted within its discretion by taking this action without conducting an additional evidentiary hearing because [Anderson] w[as] already afforded due process to

6

challenge the misconduct at issue [at] the hearing . . . .[7]
There is no reason for the Board to re-litigate those facts.

. . . . The record in this matter establishes that the Board decision mailed April 9, 2018[,] is supported by substantial evidence, does not constitute an error of law, and does not violate [Anderson's] constitutional rights.

C.R. at 49-50.

As in *Butterfield*,

[Anderson's] statement clearly show[ed] that [Anderson], while not actually committing assault, was "inclined toward or disposed to" commit assault. It could easily be interpreted as a threat to [assault CO Husick] if the opportunity ever arose . . . . Such a statement is sufficient to constitute "assaultive behavior."

*Id*. at 4.

Further, although Anderson did not make his statement to CO Husick directly, even without CO Husick's testimony, the Board could reasonably conclude

---

[7] Although not expressed as a separate issue, Anderson repeatedly references that the Board violated his due process rights by rescinding his parole without a hearing. However, "[i]t is well[]settled that[,] under Pennsylvania law[,] a grant of parole by itself does not vest a prisoner with any protected liberty interest in that parole." *Johnson v. Pa. Bd. of Prob. & Parole*, 532 A.2d 50, 52 (Pa. Cmwlth. 1987). Thus, in order to determine whether the Board violated Anderson's due process rights,

it is necessary to determine his status at the time the Board rescinded its prior grant of parole. There is no question that a "parolee" has a vested liberty interest in the limited liberty offered by parole that cannot be taken away without affording the parolee minimal due process guarantees of prior notice and an opportunity to be heard.

*Johnson*, 532 A.2d at 52. However, "a prisoner does not attain the status of a 'parolee' until the grant of parole is actually executed[,]" which is when the inmate signs the acknowledgement of his parole conditions and the Board issues the release order. *Id*.; *see also Gruff v. Pa. Bd. of Prob. & Parole*, 986 A.2d 953 (Pa. Cmwlth. 2009). Therefore, parole revocation, where a parolee's liberty is at stake, carries with it a constitutionally guaranteed right to a hearing, while parole rescission, where the inmate is still confined, does not. *See Gruff*; *see also Johnson*. Specifically, a Board's parole rescission decision due to prison misconduct is not subject to a hearing. *See Lockett*; *Johnson*. Accordingly, the Board's Rescission Report properly reflected: "Hearing is not required because: . . . [i]nmate received a misconduct hearing in SCI[.]" C.R. at 40.

7

that what Anderson said, particularly in light of his history of physical violence (including against officers), constitutes assaultive behavior.[8] *See Malarik.* Thus, the Board properly concluded that Anderson's statement regarding CO Husick constituted assaultive behavior for which the Board was authorized to rescind Anderson's automatic reparole pursuant to Section 6138(d)(5)(i) of the Parole Code.

Based on the foregoing, the Board's decision is affirmed.

_____
ANNE E. COVEY, Judge

---

[8] Anderson's argument, based on *Dunkleberger*, that CO Husick was not in reasonable apprehension of bodily harm because Anderson's "unfortunate remark," Anderson Br. at 15, was conditioned upon Anderson "see[ing CO Husick] on the walkway[,]" C.R. at 41, which is an event solely within CO Husick's control, is meritless. CO Husick's duties and activities are governed by DOC, which could, conceivably, direct him anywhere within an SCI at any time. Therefore, this Court cannot reasonably conclude that it is within CO Husick's control to avoid the condition (i.e., Anderson "see[ing him] on the walkway," C.R. at 41), and being punched in the mouth. Further, to accept Anderson's argument would absurdly empower inmates to limit corrections officers' movements and avoid parole rescission merely by making their threats conditional.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Anderson,                :
         Petitioner     :
                            :
       v.                :
                            :
Pennsylvania Parole Board,   :    No. 1248 C.D. 2020
         Respondent    :

## O R D E R

AND NOW, this 20th day of October, 2021, the Pennsylvania Parole Board's June 3, 2020 decision is affirmed.

_____

ANNE E. COVEY, Judge