IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darnell T. Henderson,               :
                                    :
                        Petitioner  :
                                    :
            v.                      : No. 174 C.D. 2021
                                    : Submitted: January 21, 2022
Pennsylvania Parole Board,          :
                                    :
                       Respondent   :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: April 13, 2022


            Darnell T. Henderson (Parolee), an inmate housed at the State
Correctional Institution at Greene (SCI-Greene), petitions for review of the February
3, 2021 decision of the Pennsylvania Parole Board (Board) denying his
Administrative Appeal that challenged the Board's October 23, 2020 decision,
which rescinded the automatic reparole that the Board had granted in its August 28,
2020 decision. The Board's August 28, 2020 decision recommitted Parolee as a
technical parole violator (TPV). We affirm.

            In October 2016, Parolee received an aggregate three- to six-year
sentence of imprisonment based on his guilty pleas to a number of charges in the
Dauphin County Court of Common Pleas. Certified Record (C.R.) at 1-5. Parolee's

sentence had a minimum expiration date of June 17, 2019, and a maximum expiration date of June 17, 2022. *Id.* at 4. Following an initial boot camp release on February 20, 2019, *id.* at 6-14, the Board declared Parolee delinquent effective March 11, 2020. *Id.* at 17.

On July 29, 2020, the Board issued a Warrant to Commit and Detain Parolee. C.R. at 18. On August 7, 2020, the Board issued a Notice of Charges and Hearing. *Id.* at 19. The Board alleged that Parolee violated Parole Condition #3A requiring that he maintain regular contact with the parole supervision staff, and Parole Condition #5A requiring that he abstain from the unlawful possession, sale, or use of controlled substances. *Id.* That same day, Parolee executed a Waiver of Violation hearing and Counsel/Admission Form in which he "knowingly, voluntarily and willingly admit[ted] to the violation(s)[.]" *Id.* at 21.

As a result, the Board mailed its August 28, 2020 decision recommitting Parolee as a TPV to a Community Corrections Center (CCC)/Community Corrections Facility (CCF)/Parole Violation Center (PVC) to serve six months' backtime pursuant to Section 6138(d)(3)(i) of the Prisons and Parole Code (Code),[1] and stating that he would be automatically reparoled no later than January 29, 2021.

---

[1] 61 Pa. C.S. §6138(d)(3)(i). Code Section 6138(d)(3)(i) states, in relevant part:

> (3) Except as set forth in paragraph . . . (5), the parolee shall be recommitted for one of the following periods, at which time the parolee shall automatically be reparoled without further action by the [B]oard:
>
> (i) For the first recommitment under this subsection, a maximum period of six months.

In turn, Code Section 6138(d)(5)(i) states, in pertinent part, that "[t]he time limit under paragraph (3) ***shall not*** be applicable to a parolee who . . . [c]ommitted a disciplinary infraction involving assaultive behavior . . . ." 61 Pa. C.S. §6138(d)(5)(i) (emphasis added).

C.R. at 42-43. However, the decision also stated, in relevant part, that pursuant to Code Section 6138(d)(5)(i), he would be "reparoled automatically without further action of the Board, upon successful completion of all recommended programs, provided [that he was] in good standing with the Board." *Id.* at 43.

On October 10, 2020, the Board issued an Automatic Reparole Rescission Report indicating that Parolee committed a disciplinary infraction at the CCC/CCF involving assaultive behavior. C.R. at 57-60. The Board summarized the documentary evidence as follows:

> Misconduct report from [the Department of Corrections (DOC)] at incident number D 476240 reflects that [Parolee] violated rules: #17 – Threatening Another Person, #33 – Using Abusive, Obscene or Inappropriate Language to or About an Employee, #35 – Refusing to Obey an Order and #43 – Presence in an Unauthorized Area. The misconducts [occurred on] 09/22/2020 when [Parolee] got upset at medical staff, cursed at her, used profanities, refused [an] order to leave and threatened to "beat her ass" multiple times. He pled not guilty to the misconducts at his 09/24/2020 disciplinary hearing held at the SCI. However, the prison found him guilty of all misconducts based on the evidence presented and imposed 45 days in disciplinary custody for the infractions.

*Id.* at 58.

Based on the foregoing, the Board decided to rescind Parolee's right to automatic reparole, explaining:

> The Board recommitted [Parolee] to a[] CCC/CCF for his technical parole violation(s) by decision recorded 08/19/2020[, and mailed 08/23/2020,] with an automatic reparole date of no later than 01/29/2021. While in the center, he committed multiple disciplinary infractions, including one for threatening staff. He denied the infractions at his disciplinary hearing held in the SCI, but the prison found him guilty of all four infractions. I accept

3

the prison's finding and conclude that the threatening misconduct constitutes assaultive behavior. Because he committed an infraction involving assaultive behavior, the Board has authority to revoke his right to automatic reparole. Thus, I am voting to deny him automatic reparole and modify the recommitment location to an SCI/[Contracted County Jail (CCJ)] based on finding that he is now an identifiable threat to public safety that cannot be diverted as evidenced by his assaultive infraction in the center. I am also voting to have him reviewed for reparole one year from the date of his assaultive infraction. His current max date is 11/24/2022.

C.R. at 60. Accordingly, the Board mailed its October 23, 2020 decision rescinding the automatic reparole that the Board had granted in its August 28, 2020 recommitment decision, and directing that Parolee be reviewed for reparole on or after September 22, 2021. *Id.* at 63.

On November 19, 2020, Parolee submitted an Administrative Appeal to the Board in which he claimed, *inter alia*, that he did not commit assaultive behavior at the CCC/CCF, and SCI-Greene did not permit him to present evidence to support his version of events. *See* C.R. at 68-102. Parolee also alleged that the Board's rescission of the automatic reparole that it had previously granted without a hearing violated his due process rights, and that its decision is not supported by substantial evidence. *Id.* at 77-78.

On February 3, 2021, the Board mailed its decision denying Parolee's Administrative Appeal, which states, in pertinent part:

The [Code] provides that automatic reparole does not apply to [TPVs] who commit disciplinary infractions involving assaultive misconducts. 61 Pa. C.S. §6138(d)(5). Because [Parolee] incurred a qualifying misconduct under the statute, the Board acted within its authority by rescinding automatic reparole in this case. Moreover, the Board acted within its discretion by taking this action without conducting an additional evidentiary

4

hearing because [Parolee] was already afforded due process to challenge the misconduct at issue in the hearing held in the [SCI]. There is no reason for the Board to re-litigate those facts.

The Board regulations provide that the scope of review of an administrative appeal is limited to [determining] whether the decision is supported by substantial evidence, an error of law has been committed, or there has been a violation of constitutional law. 37 Pa. Code §73.1(a)(2). The record in this matter establishes that the Board decision mailed October 23, 2020 (recorded 10/13/2020), is supported by substantial evidence, does not constitute an error of law, and does not violate [Parolee's] constitutional rights.

Accordingly, the Board decision mailed October 23, 2020 (recorded 10/13/2020), is **AFFIRMED**.

C.R. at 139-40. Parolee filed the instant petition for review,[2] again arguing that the Board's July 23, 2018 decision rescinding the automatic parole provision in the February 14, 2018 decision violated his due process rights.

However, as stated above, Code Section 6138(d)(5)(i) states, in relevant part, that "[t]he [nine-month] time limit under paragraph (3)[(i)] ***shall not*** be applicable to a parolee who . . . [c]ommitted a disciplinary infraction involving assaultive behavior . . . ." 61 Pa. C.S. §6138(d)(5)(i) (emphasis added).[3] Thus, the

---

[2] Our review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with law, and whether necessary findings were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Miskovitch v. Pennsylvania Board of Probation and Parole*, 77 A.3d 66, 70 n.4 (Pa. Cmwlth. 2013).

[3] As this Court has observed:

Although the Board's regulations require that parolees refrain from assaultive behavior, the regulations do not provide a definition of 'assault.' 37 Pa. Code §63.4(5)(iii) (relating to general conditions of parole). However, this

**(Footnote continued on next page…)**

5

Board was without authority to apply the six-month backtime limit and automatic reparole provisions of Code Section 6138(d)(3)(i) following Parolee's DOC assaultive behavior disciplinary infraction based upon the mandatory language of Code Section 6138(d)(5)(i).

Indeed, with respect to credit for the time spent at liberty on parole that the Board must award a TPV under Code Section 6138(a)(2), this Court has explained:

> Under Pennsylvania law, the Board "can exercise only those powers conferred upon it by the General Assembly in clear and unmistakable language." . . . [Code S]ection 6138(c)(2) positively states that a TPV "**shall** be given

Court recognizes '[a]ssaultive behavior encompasses a broader category of actions than would the crime of assault, and thus actions that would not constitute a crime may nonetheless be sufficient grounds for revocation of parole.' *Jackson v. P[ennsylvania] B[oard] of Prob[ation and] Parole*, 885 A.2d 598, 601 (Pa. Cmwlth. 2005).

Moreover, in the context of parole violations, assaultive behavior is defined under the ordinary dictionary definition of assault. *Moore v. P[ennsylvania] B[oard] of Prob[ation and] Parole*, [505 A.2d 1366, 1367-68 (Pa. Cmwlth. 1986)]. Webster's Collegiate Dictionary, 73 (11th ed. 2003) defines assault as: '1 a: [A] violent physical or verbal attack. . . . [and] 2 a: [A] threat or attempt to inflict offensive physical contact or bodily harm on a person (as by lifting a fist in a threatening manner) that puts the person in immediate danger of or in apprehension of such harm or contact.'

*Flowers v. Pennsylvania B[oard] of Prob[ation] and Parole*, 987 A.2d 1269, 1271-72 (Pa. Cmwlth. 2010). Accordingly, a threat that places an individual in apprehension of bodily harm can constitute assaultive behavior, as that term is used in [a] parole condition [to refrain from assaultive behavior].

*Malarik v. Pennsylvania Board of Probation and Parole*, 25 A.3d 468, 470 (Pa. Cmwlth. 2011).

credit for the time served on parole in good standing." 61 Pa. C.S. §6138(c)(2) (emphasis added). Through this directive of the General Assembly, the Board has no choice over the matter and must grant credit to the parolee who is recommitted as a TPV.

*Penjuke v. Pennsylvania Board of Probation and Parole*, 203 A.3d 401, 416 (Pa. Cmwlth. 2019), *appeal denied*, 228 A.3d 254 (Pa. 2020) (citations omitted). Likewise, in this case, the Board was without the authority to grant the administrative relief that Parolee requested because it was affirmatively prohibited from doing so by Code Section 6138(d)(5)(i).

Moreover, as outlined by the Board, any process that Parolee was due with respect to his disciplinary infraction that took place at the SCI was provided through the grievance procedure that Parolee could pursue with respect to those disciplinary proceedings. *See, e.g.*, DOC Policy Statement DC-ADM 801(4)(C)(1) ("After the misconduct hearing has concluded the Misconduct and Hearing Record shall be forwarded to the Facility Manager/designee for review. This review shall ensure that the hearing was conducted in accordance with procedures and that the actions taken conform to facility regulations."); DOC Policy Statement DC-ADM 801(5)(A)(1) ("An inmate who has been found guilty of a misconduct charge(s) may appeal to the Program Review Committee (PRC) for initial review within 15 calendar days of the hearing. . . ."); DOC Policy Statement DC-ADM 801(5)(B)(1) ("The inmate may appeal the decision of the PRC to the Facility Manager/designee within seven calendar days of receipt of the written PRC decision . . . ."); DOC Policy Statement DC-ADM 801(5)(C)(3) ("The inmate may appeal the decision of the Facility Manager/designee within seven calendar days of the receipt of the *Facility Manager*/designee's decision. Appeals that are addressed to the Secretary, Chief Counsel, or other Central Office Staff, are delivered to these individuals first,

and then referred to the Chief Hearing Examiner's Office.") (emphasis in original). As stated in his appellate brief, Parolee availed himself of this prison appeal process. *See* Petitioner's Brief at 5.

However, Parolee may not collaterally attack the underlying misconduct determination in the instant Administrative Appeal of the Board's recission decision that was mandated by Code Section 6138(d)(5)(i), and no due process hearing was required before that decision was issued. Indeed, as this Court has explained:

> It is well[]settled that under Pennsylvania law a grant of parole by itself does not vest a prisoner with any protected liberty interest in that parole. *Green* [*v. Pennsylvania Board of Probation and Parole*, 515 A.2d 1006 (Pa. Cmwlth. 1986)]. *Cf. Jago v. Van Curen*, 454 U.S. 14 [] (1981) (no liberty interest created by a grant of parole under Ohio law until the prisoner is actually released on parole). Our case law has consistently held that a prisoner does not attain the status of a "parolee" until the grant of parole is actually executed. *See, e.g.*, *Dinkins v. Department of Justice*, [523 A.2d 1218 (Pa. Cmwlth. 1987)]; *Franklin v. Pennsylvania Board of Probation and Parole*, [476 A.2d 1026 (Pa. Cmwlth. 1984)]; *Jones v. Pennsylvania Board of Probation and Parole*, [473 A.2d 247 (Pa. Cmwlth. 1984)]. In *Green*, we held that a grant of parole is not executed until the prisoner signs the acknowledgement of parole conditions, Board form PBPP-11, and the Board issues its parole release order, Board form PBPP-10. []515 A.2d at 1008. Here, there is no allegation that [the inmate] signed the acknowledgement of parole conditions or that the Board issued a parole release order and [the inmate] concedes that they were not completed. Accordingly, [the inmate] never attained the status of "parolee" with respect to the parole granted by the [Board's] order and the Board was not required to provide him with advance notice and a hearing before it rescinded its prior grant of parole.

>Therefore, the Board did not violate any of his due process rights when it rescinded its prior grant of parole. . . .

*Johnson v. Pennsylvania Board of Probation and Parole*, 532 A.2d 50, 52 (Pa. Cmwlth. 1987). Likewise, in this case, the Board's recission decision was issued before Parolee's automatic parole was executed, so his due process rights were not violated when the Board issued that decision pursuant to Code Section 6138(d)(5)(i) without a counselled hearing. *Id. See also Anderson v. Pennsylvania Parole Board*, 266 A.3d 106, 110 n.7 (Pa. Cmwlth. 2021) ("[P]arole revocation, where a parolee's liberty is at stake, carries with it a constitutionally guaranteed right to a hearing, while parole rescission, where the inmate is still confined, does not. Specifically, a Board's parole rescission decision due to prison misconduct is not subject to a hearing.") (citations omitted).

Accordingly, the Board's decision is affirmed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darnell T. Henderson, : 
                  :
          Petitioner : 
                  :
       v. : No. 174 C.D. 2021
                  :
Pennsylvania Parole Board, : 
                  :
         Respondent : 

# **O R D E R**

AND NOW, this 13th day of April, 2022, the decision of the Pennsylvania Parole Board dated February 3, 2021, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge