Kenneth Jones, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs January 26, 1984, to President Judge CRUMLISH, JR. and Judges COLINS and BLATT, sitting as a panel of three.

*Lester G. Nauhaus*, Public Defender, with him *John H. Corbett, Jr.*, Chief of Appellate Division, and *Paulette J. Balogh*, Appellate Counsel, for petitioner.

*Arthur R. Thomas*, Assistant Chief Counsel, with him, *Robert A. Greevy*, Chief Counsel, *Jay C. Waldman*, General Counsel, and *LeRoy S. Zimmerman*, Attorney General, for respondent.

OPINION BY JUDGE BLATT, March 28, 1984:

On May 5, 1971, Kenneth Jones, petitioner, was sentenced to two consecutive terms of two and one-half to five years each; and, after serving his minimum term, he was paroled on August 21, 1976. He was arrested on June 6, 1977 in Allegheny County for firearm violations, and on June 9, 1977 a parole violation warrant was filed against him based upon these charges and for technical parole violations. On August 6, 1977, he escaped from the Allegheny County prison only to be arrested on August 18, 1977 and charged then with escape and conspiracy. On September 16, 1977, his firearm violations were nolle

prossed, and on December 14, 1977, he was found guilty of the escape charges. His sentencing was deferred until April 11, 1978 whereupon he was sentenced to two to seven years. On June 28, 1978, the Pennsylvania Board of Probation and Parole (Board) ordered that he be recommitted effective June 21, 1977, as a convicted and technical parole violator with five years to be served on his original sentence. On January 5, 1981, he was granted parole to be effective February 2, 1981; however, on January 7, 1981, he was charged with an institutional misconduct and his parole was therefore revoked by the Board on February 5, 1981 without a hearing. On January 26, 1983, furthermore, the Board, allowed the following credits to be applied to his various sentences; the time spent in prison from June 8, 1977 to August 6, 1977 to be applied against his original sentence of May 5, 1971, and from August 18, 1977 to April 11, 1978 to be applied against his escape charges.

Jones argues that the Board erred in crediting his time spent in prison from August 18, 1977 to April 11, 1978 only to his escape charges and not to his original charges. He also contends that the Board erred in revoking his parole without affording him a hearing.

As to the time credit, in *Sturtz v. Pennsylvania Board of Probation and Parole,* 71 Pa. Commonwealth Ct. 71, 453 A.2d 1093 (1983), our Court articulated the legal test for applying credits as follows: ". . . pretrial detention time is counted toward the new sentence, *not toward the backtime, when bail is not posted, even though bailposting may admittedly be unlikely."* (Emphasis added.) *Id.* at 73, 453 A.2d at 1094.[1] Inasmuch as bail was never posted here, we believe that

---

[1] *See also Rivera v. Pennsylvania Board of Probation and Parole,* 79 Pa. Commonwealth Ct. 558, 470 A.2d 1088 (1984).

the Board was correct in crediting the aforementioned time only to the charges relating to the escape.

As to the parole revocation without a hearing, in *Morrissey v. Brewer,* 408 U.S. 471 (1972), the Supreme Court stated these minimal requirements of due process for parole revocation:

> (a) [W]ritten notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. And, in accordance with *Morrissey,* in *Commonwealth ex rel Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973), the Court held that due process requirements mandated that a hearing was required for both convicted and technical parole violators before parole may be revoked.

Section 21.1 of the Parole Act (Act), Act of August 6, 1941 P.L. 861, *as amended,* 61 P.S. 331.21a defines convicted parole violators, in pertinent part, as follows:

> (a) Convicted Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole *released from any penal institution of the Commonwealth* who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which he is convicted or found guilty by a judge

or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record, may, at the discretion of the board, be recommitted as a parole violator. (Emphasis added.)

Section 21.1 of the Act, 61 P.S. 331.21a also defines technical parole violators, in pertinent part, as follows:

(b) Technical Violators. Any parolee under the jurisdiction of the Pennsylvania Board of Parole *released from any penal institution in the Commonwealth* who, during the period of parole, violates the terms and conditions of his parole, other than by the commission of a new crime of which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere in a court of record, may be recommitted after hearing before the board. (Emphasis added.)

We believe that, because Jones was never released from any penal institution after his recommitment in August of 1977, he fails to come within the ambit of either of these aforementioned definitions and thus does not acquire the procedural guarantees established in *Morrissey* and *Rundle*.

An analysis of the Board's action of January 1, 1981 lends further support to this conclusion, for the Board's order provides:

[a] Parole granted to be effective 2-2-81 to an approved plan. (sic)

[b] Subject to intensive supervision. (sic)

[c] Out-patient therapy—drug and urinalysis —to be included in plan. (sic)

[d] *You must maintain a clear conduct record until your parole date or the Board action will be rescinded.* (Emphasis added.)

(Supplemental Record at 11.) Although Jones received only an "interview" prior to the revocation of his parole, he has not reached the status of a parolee and, therefore, did not become entitled to a *Morrissey* hearing. He was a *potential* parolee who had violated a condition precedent to establishing a clear entitlement to parole. His failure to receive a *Morrissey*-type hearing prior to revocation, therefore, did not amount to a denial of due process.[2]

We will, therefore, affirm the order of the Board.

### ORDER

AND Now, this 28th day of March, 1984, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is hereby affirmed.

---

[2] While the record before us is admittedly sparce, and we wish it could be more abundant, our review of it indicates that Jones received a hearing before the Bureau of Correction Hearing Committee and, in what amounts to a collateral proceeding, an "interview" before the Board concerning his institutional misconduct. We believe that such action is consistent with the requirements of *Wolff v. McDonnell*, 418 U.S. 539 (1974).