532 A.2d 50

Rickie Johnson, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs August 26, 1987, to Judges CRAIG, PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Lester G. Nauhaus,* Public Defender, with him, *Richard S. Levine,* Appellate Counsel, and *John H. Corbett, Jr.,* Chief, Appellate Division, for petitioner.

*Arthur R. Thomas,* Assistant Chief Counsel, with him, *Robert A. Greevy,* Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, October 8, 1987:

Rickie Johnson, Petitioner, appeals here an order of the Pennsylvania Board of Probation and Parole (Board) that rescinds a previously issued grant of parole. Johnson contends that the Board violated his due process rights by failing to provide him with notice, an opportunity to be heard, and counsel representation prior to rescinding its prior grant of parole. We disagree and will dismiss the petition for review.

The following facts are pertinent. Johnson was originally sentenced to a term of two to twenty years as a

result of his conviction of the offense of Robbery.[1] After being granted parole on that sentence, he was returned to prison as a technical and a convicted parole violator in 1981 following his conviction in Philadelphia County for Robbery and Criminal Conspiracy.[2] He received a sentence of six to twenty years as a result of his 1981 conviction. In its parole revocation order of September 24, 1981, the Board ordered that he serve twelve months on backtime as a technical parole violator and thirty-six months on backtime as a convicted parole violator, for a total of forty-eight months on backtime. That order also granted Johnson reparole to his detainer sentence to be effective September 25, 1985.

On April 27, 1985, Johnson was charged with a Class I Misconduct[3] as a result of a confrontation with a corrections officer at the State Correctional Institution at Graterford (SCI-Graterford). He was found guilty of that misconduct following a hearing on May 2, 1985, and ordered confined in the Restrictive Housing Unit (RHU) for thirty days and lost his institution job. On August 9, 1985, Johnson was involved in another altercation at SCI-Graterford wherein he stabbed another inmate after being confronted by corrections officers for being in an unauthorized area. Following a misconduct hearing held on August 12, 1985, at SCI-Graterford, he was found guilty of a Class I Misconduct and ordered confined in the RHU for six months and again lost his institution job. The Department of Corrections (Department) subsequently informed the Board of Johnson's misconducts. He was interviewed by the Board at the State Correctional Institution at Pittsburgh (SCI-Pittsburgh), to which he had been transferred, in December, 1985. On December 10, 1985, the Board mod-

---

[1] Section 3701 of the Crimes Code, 18 Pa. C. S. §3701.

[2] Section 903 of the Crimes Code, 18 Pa. C. S. §903.

[3] *See* 37 Pa. Code §95.10(a).

ified its order of September 24, 1981, granting parole to Johnson effective September 24, 1985, and changed his reparole date to June 24, 1986, due to his history of prison misconducts. Johnson has filed an action in this Court seeking to have his parole become effective as of September 24, 1985, and adjust the minimum and maximum terms of his six to twenty year detainer sentence accordingly.

In this appeal, Johnson argues that (1) the Board violated his due process rights by rescinding its prior grant of parole without affording him prior notice and an opportunity to be heard and be represented by counsel; and (2) that the nine months the Board directed that he serve prior to his new reparole date amounts to an abuse of discretion. We shall review these issues in the order stated. We are also mindful that this is not a parole revocation order that Johnson seeks us to review, rather it is an order rescinding a previous Board order granting parole. As such, our review of such an order is severely limited. *See Reider v. Pennsylvania Board of Probation and Parole,* 100 Pa. Commonwealth Ct. 333, 514 A.2d 967 (1986) (en banc); *LaCamera v. Pennsylvania Board of Probation and Parole,* 13 Pa. Commonwealth Ct. 85, 317 A.2d 925 (1974) (en banc).

To determine what due process rights Johnson was entitled to, it is necessary to determine his status at the time the Board rescinded its prior grant of parole. There is no question that a "parolee" has a vested liberty interest in the limited liberty offered by parole that cannot be taken away without affording the parolee minimal due process guarantees of prior notice and an opportunity to be heard. *Morrissey v. Brewer,* 408 U.S. 471 (1972); *Commonwealth ex rel. Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973). These due process rights accrue to a parolee still confined in prison on

"constructive parole"[4] as well as parolees who serve their paroles outside of prison walls. *Green v. Pennsylvania Board of Probation and Parole,* 101 Pa. Commonwealth Ct. 132, 515 A.2d 1006 (1986).

It is well-settled that under Pennsylvania law a grant of parole by itself does not vest a prisoner with any protected liberty interest in that parole. *Green. Cf. Jago v. Van Curen,* 454 U.S. 14 (1981) (no liberty interest created by a grant of parole under Ohio law until the prisoner is actually released on parole). Our case law has consistently held that a prisoner does not attain the status of a "parolee" until the grant of parole is actually executed. *See e.g., Dinkins v. Department of Justice,* 105 Pa. Commonwealth Ct. 282, 523 A.2d 1218 (1987); *Franklin v. Pennsylvania Board of Probation and Parole,* 83 Pa. Commonwealth Ct. 318, 476 A.2d 1026 (1984); *Jones v. Pennsylvania Board of Probation and Parole,* 81 Pa. Commonwealth Ct. 194, 473 A.2d 247 (1984). In *Green,* we held that a grant of parole is not executed until the prisoner signs the acknowledgement of parole conditions, Board form PBPP-11, and the Board issues its parole release order, Board form PBPP-10. 101 Pa. Commonwealth Ct. at 135, 515 A.2d at 1008. Here, there is no allegation that Johnson signed the acknowledgement of parole conditions or that the Board issued a parole release order and Johnson concedes that they were not completed. Accordingly, Johnson never attained the status of "parolee" with respect to the parole granted by the September 24, 1981, order

---

[4] *Hines v. Pennsylvania Board of Probation and Parole,* 491 Pa. 142, 420 A.2d 381 (1980). "Constructive parole" occurs where a prisoner is paroled from one sentence to begin serving the minimum term of a consecutive sentence. Thus, even though the prisoner is still incarcerated, he is on parole from the first sentence while simultaneously serving the minimum term of the second sentence.

and the Board was not required to provide him with advance notice and a hearing before it rescinded its prior grant of parole. Therefore, the Board did not violate any of his due process rights when it rescinded its prior grant of parole on December 10, 1985.

We next turn to Johnson's other contention that the Board abused its discretion when it set back his reparole date nine months to June 24, 1986. Again, we emphasize that we are dealing with a parole *recision* order, not a parole revocation order. The nine month setback ordered by the Board, therefore, is not "backtime" imposed for a parole violation but an exercise of the Board's discretion not to release a prisoner on parole.[5] The decision to grant, rescind, or revoke parole is one purely of administrative, not judicial, discretion. *Rivenbark v. Pennsylvania Board of Probation and Parole,* 509 Pa. 248, 501 A.2d 1110 (1985). The General Assembly has vested the Board with broad discretion in determining if and when a prisoner under its jurisdiction should be released on parole. *Greco v. Pennsylvania Board of Probation and Parole,* 99 Pa. Commonwealth Ct. 107, 513 A.2d 493 (1986); *Bradshaw v. Pennsylvania Board of Probation and Parole,* 75 Pa. Commonwealth Ct. 90, 461 A.2d 342 (1983). There is now no question that under Pennsylvania law a prisoner does not have a right to be released on parole automatically upon the expiration of his sentence's minimum term. *Commonwealth v. Brittingham,* 442 Pa. 241, 275 A.2d 83 (1971); *Blair v. Pennsylvania Board of Probation and Parole,* 78

---

[5] "Backtime" is a penalty imposed by the Board for a violation of parole. *Krantz v. Pennsylvania Board of Probation and Parole,* 86 Pa. Commonwealth Ct. 38, 43, 483 A.2d 1043, 1047 (1984). By definition, "backtime" is that part of an existing judicially imposed sentence that a parole violator is required to serve as a result of violating the terms and conditions of parole prior to being eligible to again apply for parole. *Id.*

Pa. Commonwealth Ct. 41, 467 A.2d 71 (1983), *cert. denied,* 466 U.S. 944 (1984). Where a prisoner is recommitted following a parole revocation hearing to serve backtime as a parole violator, the parolee loses his status as a "parolee" and has no right to be automatically released on parole upon the expiration of the backtime mandated by the Board. *Counts v. Pennsylvania Board of Probation and Parole,* 87 Pa. Commonwealth Ct. 277, 487 A.2d 450 (1985), *allowance of appeal denied,* No. 236 E.D. Allocatur Dkt. 1985 (Pa., filed September 5, 1985); *Krantz v. Pennsylvania Board of Probation and Parole,* 86 Pa. Commonwealth Ct. 38, 483 A.2d 1044 (1984).

The General Assembly has mandated that the Board acquire specialized knowledge and expertise to assist it in making decisions whether or not to release prisoners on parole. An example of this mandate is found in Section 19 of the Act of August 6, 1941 (Parole Act), P.L. 861, *as amended,* 61 P.S. §331.19, that requires the Board to inform itself of a prisoner's criminal history, family background, adjustment while in prison, and a variety of other things pertaining to the prisoner prior to making the decision to grant or deny parole. *See Bandy v. Pennsylvania Board of Probation and Parole,* 108 Pa. Commonwealth Ct. 387, 530 A.2d 507 (1987) (61 P.S. §331.19 requires the Board to inform itself of a parolee's criminal record in determining whether to recommit him as a parole violator as well as when deciding whether to initially release him on parole). Additionally, the Board reviews five factors prior to making a parole release decision: (1) the extent of the risk to the community; (2) the nature of the prisoner's offense and his prior criminal history; (3) the prisoner's job potential and employment; (4) the prisoner's emotional and family stability; and (5) the prisoner's adjustment to prison.

1977-1978 Pa. Bd. of Probation & Parole Biann. Rep. at 6.

In view of this specialized knowledge and expertise of the Board in parole matters, our courts have consistently held that they will not interfere with the discretion of the Board in granting parole. For example, in *Reider*, we noted that it is for the Board alone to determine whether or not a prisoner is sufficiently rehabilitated to serve the remainder of his sentence outside of prison. Once the Board performs its statutory duties under 61 P.S. §331.19, regarding the gathering of information, and under Section 22 of the Parole Act, 61 P.S. §331.22, regarding time constraints, and the recording of its action, the Board has done all that the law requires. 100 Pa. Commonwealth Ct. at 343, 514 A.2d at 971-72. In *Barnhouse v. Pennsylvania Board of Probation and Parole*, 89 Pa. Commonwealth Ct. 512, 492 A.2d 1182 (1985), we stated that the Board's discretion in granting or denying parole is not generally subject to judicial review. *Id.* at 514, 492 A.2d at 1183. Thus it is clear that a prisoner may not obtain judicial review of a Board order denying a parole application. *Reider*.

The order at issue here is not, strictly speaking, a denial of a parole application but rather a recision of a previously granted parole. However, in view of the fact that a prisoner has no greather right to an unexecuted grant of parole than does a prisoner to release on parole generally, we hold that the non-reviewability of the Board's discretion in rescinding parole is the same as where the Board exercises its discretion in denying a parole application. Thus, once it is determined that a grant of parole is unexecuted, the Board may exercise the broad discretion granted it by the General Assembly and, under *Reider*, that discretion is not subject to judicial review. Therefore, we defer to the Board's discretion in determining that, in view of the two serious

misconducts committed by Johnson while confined at SCI-Graterford shortly before his anticipated parole, his parole should be set back for a period of nine months.

Having found that Johnson possessed no protected liberty interest in his unexecuted grant of parole and that the Board's discretion in rescinding that unexecuted grant of parole is not subject to judicial review, pursuant to our decision in *Reider*, we shall dismiss the petition for review.

## ORDER

Now, October 8, 1987, the Petition for Review filed by Rickie Johnson from an Order of the Pennsylvania Board of Probation and Parole at Parole No. 8186-K, dated December 10, 1985, rescinding a grant of parole dated September 24, 1981, and establishing a new reparole date of June 24, 1986, is hereby dismissed.