IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Saultus A'tom Juan Fultze,       :
               Petitioner      :
                                  :
      v.                       : No. 77 C.D. 2021
                                  : ARGUED: September 20, 2021
Pennsylvania Parole Board,   :
               Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                    FILED: December 15, 2021

Presently before this Court is Petitioner Saultus A'tom Juan Fultze's (Fultze) Petition for Review, through which he challenges Respondent Pennsylvania Parole Board's (Board) September 22, 2020 decision to rescind his parole, and the Board's Motion to Quash for Lack of Jurisdiction (Motion to Quash). After thorough review, we conclude that Fultze's appeal was premature, quash his appeal for lack of jurisdiction on that basis, and dismiss the Motion to Quash as moot.

## I. Background

The underlying facts are not in dispute. Fultze pled guilty to the crime of Driving Under the Influence-Highest Impairment and was sentenced on May 30, 2018, to a term of incarceration of 2 to 5 years in a state correctional institution. The Department of Corrections (DOC) thereafter calculated Fultze's minimum sentence date as May 15, 2020, and his maximum sentence date as May 15, 2023.

By decision dated January 30, 2020, the Board directed that Fultze be released on parole on or after May 15, 2020, his minimum sentence date. Shortly thereafter,

on March 6, 2020, Governor Tom Wolf, utilizing the powers granted to him under Section 7301(c) of the Emergency Management Services Code (EMS Code),[1] 35 Pa. C.S. §7301(c), proclaimed that a disaster emergency existed in the Commonwealth due to the COVID-19 pandemic. On April 10, 2020, Governor Wolf issued an order, under the authority of Section 7301(a), (f)(5), and (f)(7) of the EMS Code,[2] 35 Pa. C.S. §7301(a), (f)(5), (f)(7), and Article IV, Section 9(a) of the Pennsylvania Constitution,[3] directing the DOC to establish a Reprieve of Sentence of Incarceration Program (Reprieve Program). Certified Record (C.R.) at 7-9.

The purpose of this program was to curb the spread of the coronavirus within the state correctional system by releasing certain inmates from incarceration, including inmates within 9 months of their minimum eligibility release date or any inmate with a medical condition that rendered them particularly vulnerable to the coronavirus who was within 12 months of such date. *Id.* This order further provided that the Governor would "temporarily suspend the sentences of incarceration of those persons who qualify and comply with supervision requirements for such length of time as may be necessary to respond to the Disaster Emergency proclaimed on March 6, 2020, or at such time as the Disaster Emergency is terminated." *Id.* at 9.

---

[1] Section 7301(c) of the EMS Code specifically authorizes the Governor to declare a disaster emergency by executive order or proclamation.

[2] Section 7301(a) of the EMS Code provides that "[t]he Governor is responsible for meeting the dangers to this Commonwealth and people presented by disasters." 35 Pa. C.S. §7301(a). Section 7301(f)(5) authorizes the Governor to "[d]irect and compel the evacuation of all or part of the population from any stricken or threatened area within this Commonwealth if this action is necessary for the preservation of life or other disaster mitigation, response or recovery." 35 Pa. C.S. §7301(f)(5). Section 7301(f)(7) empowers the Governor to "[c]ontrol ingress and egress to and from a disaster area, the movement of persons within the area and the occupancy of premises therein." 35 Pa. C.S. §7301(f)(7).

[3] Article IV, Section 9(a) permits the Governor to, *inter alia*, grant reprieves in all criminal cases, except impeachment. PA. CONST. art. IV, §9(a).

The DOC thereafter identified Fultze as an incarcerated individual eligible for the Reprieve Program. Fultze signed an Emergency Release Agreement, which included conditions governing his release and cautioned that a failure to abide by the same would result in the revocation of his release and his return to a state correctional institution. *Id.* at 10-12. The Emergency Release Agreement was signed by Fultze on April 16, 2020, and he was released from incarceration the next day. *See id.*

In early September 2020, Fultze tested positive for marijuana and alcohol, and was accused by his girlfriend of assaulting her. *Id.* at 15. As a result, Fultze was returned to a state correctional institution on September 11, 2020. *Id.* at 13. Following his return, on September 14, 2020, the DOC recalculated Fultze's maximum sentence date as October 10, 2023, and gave him no credit for the time he was free from incarceration under the DOC's Reprieve Program. *See id.* at 17.

On September 16, 2020, the Board issued a Misconduct Memo to Hearing Examiner Timothy Douglass, in which it recommended that the Board's January 30, 2020 decision to parole Fultze be rescinded due to his misconduct while out on reprieve. *Id.* at 16. Douglass agreed with this recommendation on September 18, 2020, as did a single Board member four days later, prompting the Board to issue a decision on September 22, 2020, that rescinded its January 30, 2020 parole approval. *See id.* at 16, 20.

On October 26, 2020, Fultze submitted an Administrative Remedies Form to the Board, through which he challenged the Board's September 22, 2020 decision. *Id.* at 21.[4] Therein, Fultze stated that he had been on "furlough status" from April

[4] Fultze's October 26, 2020 Administrative Remedies Form facially appears to have been untimely. *See Lawrence v. Pa. Bd. of Prob. & Parole*, 145 A.3d 799, 803 (Pa. Cmwlth. 2016) ("An administrative appeal from a recommitment as a parole violator must be filed within 30 days of the date that Board's decision was mailed to the inmate."); 37 Pa. Code § 73.1(a)(1), (b)(1). However, Fultze's allegations in his Administrative Remedies Form suggest that there were

17, 2020, until May 15, 2020, at which time his furlough transitioned to parole consistent with the Board's January 30, 2020 decision. *Id.* In addition, Fultze argued that the Board had improperly failed to hold a hearing prior to rescinding his parole and had not sent him its September 22, 2020 decision. According to Fultze, "someone else" provided him with that decision, in response to two inquiries Fultze had made regarding his situation. *Id.*[5]

On January 22, 2021, and despite the fact that the Board had not yet ruled upon his Administrative Remedies Form, Fultze appealed the Board's September 22, 2020 decision to our Court via a *pro se* petition for review. Therein, he alleged that the Board had violated his due process rights by failing to provide him with a hearing upon his return to a state correctional institution. He also argued that the Board erred and abused its discretion by failing to provide him with credit for the time he was released in accordance with Section 6138(a)(2.1) of the Prisons and

---

breakdowns in the administrative process that prevented him from receiving the Board's September 22, 2020 decision in a proper manner and the Board has at no point argued that the Administrative Remedies Form was not timely filed or treated it as such. *Cf. Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130, 1131 (Pa. 1996) (articulating standards for allowing appeal *nunc pro tunc*). Given this, we will assume that the Board deemed Fultze's Administrative Remedies Form as timely filed.

[5] In full, Fultze stated:

> I had a bed [sic] date of 5-19-20 but was released early under the reprieve. I was told I would be on furlough status from 4-17-20 to 5-15-20 my min. I was brought back because my [parole officer] & his supervisor saw a note saying I was in furlough status. This was 9-11-20, but I wasn't in furlough status anymore. I was never given a hearing or any paperwork to appeal decision. This paper was give [sic] to me by someone else because I wrote two letters asking about decision.

C.R. at 21.

4

Parole Code[6] or a reason for the denial of such credit as required by our Supreme Court's decision in *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466 (Pa. 2017).

On February 10, 2021, the Board advised Fultze that it would take no action with respect to his Administrative Remedies Form. *See id.* at 23-24. The Board explained that Fultze had never attained the status of "parolee" and, thus, any attempt to appeal from a decision rescinding parole "cannot be accepted." *Id.* More specifically, the Board noted that while Fultze was granted parole pursuant to its January 30, 2020 decision, *his parole was never executed*, *i.e.*, he did not sign conditions governing parole and the Board never issued an order releasing him on parole. *Id.* Rather, the Board stated that Fultze was simply granted a reprieve due to the COVID-19 pandemic and was released on April 17, 2020, in accordance with the DOC's Reprieve Program. *Id.*

On March 2, 2021, the Board filed the instant Motion to Quash. Therein, the Board alleges that this Court lacks jurisdiction because the Board did not issue an appealable order in Fultze's case. The Board asserts that the September 22, 2020 order that Fultze appeals did not revoke his parole or establish a new parole violation maximum sentence date, but instead merely *rescinded an unexecuted grant of parole.* Further, the Board reiterates that the January 30, 2020 decision to release Fultze on parole was never executed and, consequently, Fultze was not on parole at any point following his release from a state correctional institution on April 17, 2020.

---

[6] 61 Pa. C.S. §6138(a)(2.1). This Section provides that "[t]he [B]oard may, in its discretion, award credit to a parolee recommitted under paragraph (2) for the time spent at liberty on parole. . . ."

5

On May 17, 2021, we appointed the Public Defender of Forest County to represent Fultze. On June 16, 2021, counsel for Fultze entered her appearance and filed a brief, in which she argues that the Board violated Fultze's due process rights by declining to treat him as a parolee and failing to provide him with proper notice and a suitable opportunity to be heard with regard to rescinding his parole. Fultze's Br. at 5-8.[7] The Board filed its own brief on July 21, 2021, in which it again asserts that our Court does not have jurisdiction to consider Fultze's appeal, because the Board's decision to rescind an unexecuted grant of parole is not subject to judicial review. Board's Br. at 7-11. As such, both the Motion to Quash and Petition for Review are ready for our consideration.

## II. Discussion

Though this appeal presents us with genuinely novel issues, we are without the ability address their merits and need not rule upon the Motion to Quash, due to the fact that Fultze elected to appeal the Board's September 22, 2020 decision before the Board ruled upon his Administrative Remedies Form.[8] In general, "[c]ourts lack jurisdiction to hear premature appeals[,] just as they lack jurisdiction to hear late appeals." *Magyar v. Zoning Hearing Bd. of Lewis Twp.*, 885 A.2d 123, 128 (Pa. Cmwlth. 2005). In this particular context, "this Court's appellate jurisdiction over a decision of the Board . . . does not attach until after the Board has entered a final appealable order, usually denying administrative relief, and an appeal has been taken therefrom." *Bowman v. Pa. Bd. of Prob. & Parole*, 709 A.2d 945, 949 (Pa. Cmwlth. 1998). In light of this, even if the Board's decision to rescind Fultze's parole was

---

[7] Counsel for Fultze did not file a separate answer to the Motion to Quash.

[8] The parties do not address the timeliness issue in their respective briefs. The substantive arguments the parties do put forth are not relevant to the disposition of this appeal, as the lack of jurisdiction discussed *infra* prevents this Court from considering them.

appealable to our Court, the proper order for Fultze to appeal would have been the one issued by the Board on February 10, 2021, through which it denied his request for administrative relief. Fultze's appeal of the Board's September 22, 2020 decision was thus premature and procedurally improper.

Moreover, the instant appeal presents additional jurisdictional issues beyond its prematurity. First, it is well settled that decisions by the Board to *rescind unexecuted grants of parole are not generally subject to judicial review*. *See Gruff v. Pa. Bd. of Prob. & Parole*, 986 A.2d 953, 959 (Pa. Cmwlth. 2009); *Johnson v. Pa. Bd. of Prob. & Parole*, 532 A.2d 50, 53-54 (Pa. Cmwlth. 1987). Thus, this was not an order that is appealable to our Court. Second, even if we were to assume that the Board's September 22, 2020 decision was directly appealable to our Court, it remains that Fultze filed his Petition for Review well after he had learned of that decision and the 30-day appeal window had closed. *See* Pa. R.A.P. 1512(a)(1) ("A petition for review of a quasijudicial order . . . shall be filed with the prothonotary of the appellate court within 30 days after the entry of the order."). Thus, even if we were able to ignore the prematurity issue, it remains that we would not be able to exert jurisdiction over Fultze's appeal, as he failed to offer any explanation for why *nunc pro tunc* relief would be warranted under the circumstances.[9]

---

[9] While we do not fully address the merits of this matter because of our lack of jurisdiction, we also note that unexecuted parole grants do not vest affected individuals with protected liberty interests and, as such, due process protections do not apply in the event the Board elects to rescind such an unexecuted grant. *Johnson*, 532 A.2d at 52.

7

### III. Conclusion

Accordingly, we conclude that we lack jurisdiction to consider Fultze's appeal, due to the fact that he filed it prematurely, and must quash it on that basis.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Saultus A'tom Juan Fultze,       :
              Petitioner     :
                              :
      v.                 :  No. 77 C.D. 2021
                              :
Pennsylvania Parole Board,     :
           Respondent   :

## **O R D E R**

AND NOW, this 15th day of December, 2021, it is hereby ORDERED that Petitioner Saultus A'tom Juan Fultze's Petition for Review is QUASHED for lack of jurisdiction, as Petitioner's appeal was premature. It is FURTHER ORDERED that Respondent Pennsylvania Parole Board's Motion to Quash for Lack of Jurisdiction is DISMISSED AS MOOT.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Saultus A'tom Juan Fultze, : 
           Petitioner : 
: No. 77 C.D. 2021
v. : Argued: September 20, 2021
: 
Pennsylvania Parole Board, : 
           Respondent : 


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## *OPINION NOT REPORTED*

DISSENTING OPINION
BY JUDGE McCULLOUGH              FILED: December 15, 2021


Respectfully, I disagree with the conclusion of the Majority that Saultus A'tom Juan Fultze (Fultze), proceeding *pro se* in this matter, filed a premature petition for review over which this Court lacks jurisdiction. In my view, the entirely unique circumstances of this case present one of those situations where this Court should grant Fultze *nunc pro tunc* relief, assume jurisdiction over the matter, and decide the issues presented in the petition for review.

Here, by decision dated January 30, 2020, the Pennsylvania Parole Board (Board) granted Fultze parole on or after May 15, 2020, the date upon which he would have reached his minimum sentence date. However, prior to Fultze's parole release date and the formal execution of documents necessary to effectuate his parole, on April 16, 2020, Fultze signed an Emergency Release Agreement and, having been a recipient of the Governor's reprieve program due to the COVID-19

pandemic, he was released the next day, April 17, 2020. While on release, Fultze engaged in behavior that violated the terms of the reprieve program, and he was returned to a state correctional institution on September 11, 2020. Thereafter, on September 14, 2020, the Department of Corrections recalculated Fultze's maximum sentence date and provided him with no credit for the time he was released under the reprieve program.

Shortly thereafter, on September 22, 2020, the Board issued a formal decision rescinding its January 30, 2020 order that granted Fultze parole. On October 26, 2020, Fultze submitted an Administrative Remedies Form, challenging the Board's September 22, 2020 decision. On January 22, 2021, Fultze filed a *pro se* petition for review in this Court, seeking to appeal the Board's September 22, 2020 order. Approximately 2½ weeks after Fultze filed his petition for review in this Court, the Board issued correspondence and/or an order on February 10, 2021, advising Fultze that it would take no action with respect to his Administrative Remedies Form. More specifically, the Board stated that Fultze had never attained the status of "parolee" and, therefore, he could not file an administrative appeal from the Board's September 22, 2020 order rescinding his unexecuted grant of parole. In other words, the Board concluded that its September 22, 2020 decision was unappealable.

In unraveling this procedural quagmire, I would conclude that, although the Board effectively stated in its February 10, 2021 correspondence/order that its September 22, 2020 decision was unappealable, to preserve Fultze's constitutional right to appeal to a court from an administrative agency, the Board's September 22, 2020 order (for all intents and purposes) constituted the final appealable order. *See Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466, 474 (Pa.

2017).  Thus, Fultze had 30 days from the date of that order, approximately October 22, 2020, to file a timely petition for review in this Court.  But rather than file a petition for review, Fultze, apparently relying on the longstanding case law regarding the exhaustion of administrative remedies, decided to pursue an administrative appeal from the September 22, 2020 order by filing an Administrative Remedies Form.[1]  To me, such reliance is entirely appropriate because it is well settled that "this Court's appellate jurisdiction over a decision of the Board [] does not attach until after the Board has entered a *final appealable order, usually denying administrative relief,* and an appeal has been taken therefrom."  *Gruff v. Pennsylvania Board of Probation and Parole*, 986 A.2d 953, 958-59 (Pa. Cmwlth. 2009) (emphasis in original).  Further, as we have previously noted, there is a "lack of clear guidance from this Court or in the Board's regulations regarding the rescission of executed parole."  *Id.*

An appeal *nunc pro tunc* may be allowed where the delay in filing the appeal was caused by extraordinary circumstances involving a breakdown in the administrative process.  *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130, 1131 (Pa. 1996).  Here, Fultze filed his petition for review on January 22, 2021, approximately two months past the deadline for filing an appeal from the September 22, 2020 order, while, understandably, he pursued an administrative appeal through the Board and seemingly delayed filing an appeal to this Court as a result of that administrative procedure.  Indeed, the Board's standardized Administrative Remedies Form, which Fultze completed, advised him as follows:

_____

[1] Having determined that the September 22, 2020 order is the final, appealable order in this matter, I find it irrelevant that Fultze filed his petition for review a few weeks before the Board issued its February 10, 2021 correspondence/order because, in all events, the petition for review was filed late, and Fultze utilized the administrative appeal process during the time in which he was obligated to file a timely petition for review in this Court.

PAM - 3

> Failure to administratively appeal a Board decision may affect your legal rights. *If you wish to appeal a decision, you must file a request for administrative relief with the Board within thirty (30) days of the mailing date of the [B]oard decision.* The request shall set forth specifically the factual and legal bases for the allegations. *You have the right to an attorney* in *this appeal <u>and</u> in any subsequent appeal to the Commonwealth Court.*

(Certified Record (C.R.) at 21) (emphases added). Further, the regulation at 37 Pa. Code §73.1(b)(1) states, in relevant part, that "*[a] parolee . . . may petition for administrative review under this subsection of determinations relating to revocation decisions which are not otherwise appealable* [and the petition] shall be received . . . within 30 days of the mailing date of the Board's determination." *Id.* (emphasis added). Notably, this regulation also provides that, "[w]hen a timely petition has been filed, *the determination will not be deemed final for purposes of appeal to a court until the Board has mailed its response to the petition for administrative review.*" *Id.* (emphasis added).

Yet, despite the instructions and guidance that the Board has provided inmates in the standardized form and its regulation, the Board's February 10, 2021 correspondence/order, issued in response to Fultze's Administrative Remedies Form, essentially contradicted those very instructions and guidance in a diametric fashion. Specifically, in its February 10, 2021 correspondence/order, the Board informed Fultze that "any attempt to appeal the [Board's September 22, 2020] decision to rescind parole cannot be accepted." (C.R. at 23.) Put differently, the Board concluded that Fultze filed an Administrative Remedies Form to seek review of a previous decision—which, in the peculiar facts of this case, including a novel reprieve program instituted by the executive branch as a result of a pandemic—just

happened to be one that the Board said could not be subject to review because it was unappealable in nature.

As we have observed: "Inadequate notice is exactly the type of breakdown in the administrative process that satisfies the standard for a *nunc pro tunc* appeal." *Beaver County Children and Youth Services v. Department of Public Welfare*, 68 A.3d 44, 48 (Pa. Cmwlth. 2013). For example, this Court has granted *nunc pro tunc* relief, in a case arising under the Child Protective Services Law,[2] where "the delay in filing the request for expungement was caused by the [a]gency's error in not properly informing [the petitioner] of his appeal rights." *C.S. v. Department of Public Welfare*, 879 A.2d 1274, 1278 (Pa. Cmwlth. 2005). We have also reiterated that, as a basic proposition, "*nunc pro tunc* relief [is] warranted where an administrative notice, on its face, [does] not clearly set forth the appellant's appeal rights." *Farley v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 2261 C.D. 2009, filed June 30, 2010) (unreported), slip op. at 9 n.7 (summarizing the holding in *C.S.*).[3] More on point, this Court has determined that "[a] notice published by the government agency during the appeal period that states a later appeal deadline constitutes a breakdown in the administrative process that supports *nunc pro tunc* relief." *Carr v. Horsham Township* (Pa. Cmwlth., No. 1536 C.D. 2016, filed July 10, 2017) (unreported), slip op. at 8-9.

Applying these legal precepts to the facts and procedural history of this case, I would conclude that Fultze is entitled to *nunc pro tunc* relief. In short, it is apparent that Fultze relied upon the information provided to him by the Board

[2] 23 Pa.C.S. §§6301-6388.

[3] Pursuant to section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value.

regarding the proper procedural manner that must be pursued to exhaust administrative remedies before filing a petition for review in this Court; he was led to believe, through the instructions on the Administrative Remedies Form, and, also 37 Pa. Code §73.1, that the completion of such form and the Board's subsequent disposition of it was a prerequisite to filing a petition for review in this Court; and the Board, in its February 10, 2021 correspondence/order, concluded that Fultze was not entitled to relief because he pursued and utilized the administrative procedure that the Board said was necessary to preserve an issue and the right to further appeal in this Court. Ultimately, Fultze filed an Administrative Remedies Form only to have the Board find (in essence) that he had no right to file an Administrative Remedies Form, or otherwise seek review from the Board's underlying decision, because that decision, quite simply, was not one from which an appeal could lie.

Hence, in the midst of this confusion, I respectfully dissent and, unlike the Majority, would grant Fultze *nunc pro tunc* relief.

_____
PATRICIA A. McCULLOUGH, Judge