# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ramsey Wesley Randall,                 :
                          Petitioner   :
                                       :
              v.                       :    No. 1085 C.D. 2023
                                       :    SUBMITTED:  October 9, 2025
Pennsylvania Parole Board,             :
                          Respondent   :


OPINION NOT REPORTED


**MEMORANDUM OPINION**
**PER CURIAM**                                    **FILED:  December 11, 2025**


Before the Court is the application of Dana E. Greenspan, Esq., of the Montgomery County Public Defender's office, for leave to withdraw as counsel on behalf of Ramsey Wesley Randall, Petitioner.[1]  Petitioner is currently incarcerated after recommitment by Respondent, Pennsylvania Parole Board, as a technical parole violator for failing to refrain from assaultive behavior.  He has petitioned for review of separate decisions revoking his parole and rescinding automatic reparole. For the reasons set forth, we grant Attorney Greenspan's application to withdraw as counsel and dismiss Petitioner's petition for review.

---

[1] The Montgomery County Public Defender was appointed to represent Petitioner after he was moved to State Correctional Institution-Phoenix (hereinafter, state correctional institutions are referred to as "SCI").  Previously, Petitioner was at SCI-Greene and his petition for review was filed by the Greene County Public Defender.

The Court has granted the Pennsylvania Parole Board's application for a stay of the briefing schedule.

## *Background*

The essential facts of the matter are as follows. In 2016, Petitioner was found guilty of offenses with a maximum initial aggregated sentence of 10 years and an initial maximum date of July 17, 2026. As recorded on October 9, 2020, the Board granted parole to Petitioner, and he was released on March 10, 2021. Prior to release, Petitioner executed a form agreeing to the following condition of parole: "You shall: refrain from any assaultive behavior." Conditions Governing Parole/Reparole Executed March 9, 2021, Certified R. "C.R." at 12.

Eventually, Petitioner's parole supervision was transferred to North Carolina. On February 8, 2023, the United States Supreme Court Police Intelligence Unit (PIU) was alerted regarding a voicemail received in the Supreme Court's Clerk's Office that day, in which Petitioner identified himself and a case he had filed in a federal district court. Petitioner complained that he had submitted repeated emails to get "emergency review for emergency injunctive relief" by the Supreme Court. PIU Mem. of Activity, C.R. at 77. He expressed frustration with the response to his filings and communications with the courts and stated that he had served United States Marshals with process, and further stated, in pertinent part, as follows:

> Therefore, the United States of America has 24 hours, well I'm giving you guys until Friday to track down the information and the summons, and suit cause of action . . . .
>
> Therefore, I'm coming after everybody in the office! Justices and all! Obstruction of justice in your individual capacities. I know the game. 72 hours. [Petitioner] was born under the United States of America employee contract called the United States Constitution which is the First Amendment and you continue to violate my First Amendment rights, so I'm going to continue to fight it, until you respect them.

2

*Id.* In addition to the voicemail, earlier on the same day Petitioner sent an email to the Clerk's Office with the Subject Line, "IF . . . I MUST . . . THREATEN TO KILL PRES. BIDEN TO GET U TO WATCH IT I WILL." *Id.* at 78 (ellipsis in original). The demand to watch refers, apparently, to an included link to a video on Instagram of Petitioner discussing the injustices he faced and his "fight against this country and it [sic] criminal justice system." *Id.* Petitioner further read a petition he had filed with the Clerk's Office which was denied and returned to his possession.[2]

The PIU's investigation resulted in the Pennsylvania Department of Corrections issuing a warrant for his arrest. After surrendering himself in North Carolina on February 9, 2023, he was transported to SCI-Greene on February 19, 2023. On March 8, 2023, Petitioner was given a notice of preliminary hearing, which was held on March 17, 2023. Based upon the above facts, the Board hearing examiner found probable cause and Petitioner was charged with a technical parole violation.

A revocation hearing was held by teleconference on May 26, 2023, at SCI-Greene, at which Petitioner was represented by his then-counsel. At the hearing, counsel noted Petitioner's objection to the fact that he was arrested in North Carolina on February 9, 2023 but did not receive, upon his detention, any documentation detailing the conditions of his parole violation and that his right to a prompt hearing was violated because he was detained from February 19, 2023 until March 8, 2023, and did not have his preliminary hearing until March 17, 2023.

An agent for the Department of Corrections' Parole Field Services testified and presented the memorandum from PIU and a screenshot of the email Petitioner sent to the Supreme Court. Counsel objected to the admission of the email

---

[2] Petitioner has not disputed any of the facts alleged in the PIU report, which was relied upon by the Board in finding a technical parole violation.

3

without the linked video on Instagram, which objection was overruled. On cross-examination, the agent confirmed that he had no knowledge of whether any charges had been filed against Petitioner. Petitioner testified that he did not intend to threaten and that he was just looking for a response to a petition he had filed with the Supreme Court, and that charges had not been filed against him.

On June 6 the Board rendered a decision to recommit Petitioner as a technical parole violator for six months for failing to refrain from assaultive behavior. The Board explained that the decision was based upon the testimony of the agent and Petitioner, as well as the memo from the PIU.[3] The decision contained a date of automatic reparole without further Board action of August 8, 2023, provided that Petitioner did not commit a disciplinary infraction involving assaultive behavior.

Before his revocation hearing, Petitioner was found to have engaged in misconduct in the nature of assaultive behavior at SCI-Greene. As a result of this, after the revocation hearing, the Board issued a second decision ordering the rescinding of automatic reparole and directing that Petitioner be rereviewed for parole on or after May 2024. Both Petitioner, *pro se*, and counsel filed timely administrative appeals of the decisions revoking parole and rescinding automatic reparole.[4] The Board affirmed the revocation of parole and rescission of automatic

---

[3] Petitioner agreed as a condition of parole that if charged with a parole violation arising from conduct outside of Pennsylvania, the revocation of his parole could be based solely on documentary evidence and waived the right to confront or cross-examine the person who prepared such documentary evidence or supplied the information therein. Conditions Governing Parole/Reparole Executed March 9, 2021, C.R. at 13.

[4] Petitioner filed a single administrative appeal addressing both decisions and counsel filed separate administrative appeals of each. Counsel was unable to contact Petitioner and stated that **(Footnote continued on next page…)**

reparole and Petitioner, through counsel, filed a petition for review raising the issues set forth in the administrative appeals.

After the appointment of the Montgomery County Public Defender office to represent Petitioner, Attorney Greenspan submitted an application for leave to withdraw as counsel and a "no-merit" letter[5] in support of the application. Said application and her no-merit letter are now before the Court for disposition. Petitioner has submitted a document entitled "Pro Se Brief/Emergency Petition Enclosed."

***Discussion***

A no-merit letter must detail the nature and extent of counsel's review, list each issue raised by the parolee, and explain why counsel concluded that parolee's claim is meritless. *Zerby v. Shanon*, 964 A.2d 956, 961 (Pa. 2009). In addition, court-appointed counsel who seeks to withdraw representation must notify the petitioner of the request to withdraw, furnish the petitioner with a copy of a brief or no-merit letter, and advise the petitioner of his right to retain new counsel or raise any new points that he might deem worthy of consideration. *Commonwealth v. Turner*, 544 A.2d 927, 928 (Pa. 1988). If counsel has complied with these procedural requirements for withdrawal, the Court will independently review the merits of a parolee's claims.

---

his administrative appeal of the revocation was an "amendment & supplement" to any appeal by Petitioner. July 5, 2023 Administrative Appeal, C.R. at 129.

[5] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Counsel files such a letter when seeking to withdraw from representation of a parole violator because the violator's case lacks merit, although it may not be "so anemic as to be deemed wholly frivolous." *Anderson v. Pa. Bd. of Prob. & Parole*, 237 A.3d 1203, 1204 n.2 (Pa. Cmwlth. 2020) [quoting *Commonwealth v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007)] (internal quotation marks omitted).

In Attorney Greenspan's no-merit letter, she states that she has reviewed the record and concludes that the petition for review has no merit. She sets forth an extensive summary of the record in this matter and lists each of the issues raised and explains why she believes they lack merit, with her explanation based upon ample citation to the certified record and applicable case law, statutes, and regulations. Attorney Greenspan's letter states that she is notifying Petitioner of her request to withdraw; is providing him a copy of the application to withdraw and no-merit letter; and advises him of his right to retain substitute counsel and to raise any points which he may deem worthy of merit in a *pro se* brief. As we are satisfied that Attorney Greenspan has discharged her responsibility in complying with the technical requirements to withdraw from representation, we conduct an independent review to determine whether Petitioner's petition for review lacks merit.

Petitioner has filed a document styled as a "pro se brief/emergency petition," with the statement that it is filed "in lieu of" a previously rejected brief. While the document seeks relief in various forms, we consider the filing as a brief, despite its intent to also act as a form of pleading or motion.[6] However, beyond

---

[6] To the extent the document references the application and letter, it is only to state alternative grievances Petitioner wishes to pursue and declare as follows:

> In order to allow appropriate and prompt review of the case and its merits before the Court, I urgently move the court to grant Ms. Dana Greenspan's withdrawal without haste [sic]. And in such, issue an immediate in-person closed court hearing (writ of habeas corpus) with the Petitioner . . . to review the merits on both the underlying conviction and the parole violation decisions in one session.

> If your panel deems it necessary for me to preserve certain appellate issues/rights by having counsel, then I request that I be appointed standby counsel or no attorney at all and given a formal colloquy.

Pro Se Br., Declaration.

being extensively non-compliant with the Rules of Appellate Procedure, the brief does not contain a cogent, cognizable argument as to why his petition for review has merit.[7]

The issues listed by Attorney Greespan are as follows: first, Petitioner's contention that he was denied due process by the Board and other supervising agencies in failing to give him prompt notice of charges, prompt preliminary hearing, and extended detention prior to any hearing; second, that his actions did not constitute assaultive behavior and that the Board's decision failed to state what assaultive behavior he committed; and third, that the Board improperly rescinded the automatic reparole for Petitioner when he did not commit any disciplinary infraction involving assaultive behavior after the decision directing his automatic reparole.

With regard to the notice of the charges, Petitioner signed a form prior to his release setting forth the conditions of his parole, including refraining from assaultive behavior. Petitioner's due process rights are not violated because "[i]n signing that form, [he] acknowledged that he understood his parole conditions and the penalties involved should he . . . violate them." *Lanzetta v. Pa. Bd. of Prob. and Parole*, 568 A.2d 283, 275 (Pa. Cmwlth. 1989). By examining his parole conditions, Petitioner "could have calculated which conditions his actions violated and what penalties would be given for each violation." *Id.*

---

[7] While we generally construe *pro se* filings liberally, *see Means v. Housing Authority of Pittsburgh*, 747 A.2d 1286, 1289 (Pa. Cmwlth. 2000), the argument portion of a brief must still be developed with pertinent discussion of the issues, including citations to relevant authority, pursuant to Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 2119(a). When parties fail to satisfy this requirement, the Court is neither obliged, nor even particularly equipped, to develop an argument for them; moreover, to do so places the Court in the conflicting roles of advocate and neutral arbiter. *C.M. v. Pa. State Police*, 269 A.3d 1280, 1285 (Pa. Cmwlth. 2022).

Attorney Greenspan acknowledges that Petitioner's preliminary hearing was not held within 14 days of his return to Pennsylvania state custody as required under 37 Pa.Code § 71.4(2), but notes this Court's holding that an untimely preliminary hearing in and of itself does not violate a parolee's due process rights unless he can show that a deprivation or prejudice was caused by the delay. *McKenna v. Pa. Bd. of Prob. and Parole*, 782 A.2d 1105, 1107 (Pa. Cmwlth. 2001). Petitioner does not specify any deprivation or prejudice resulting from the delay. Thus, there is no merit to the contention that the delay in the preliminary hearing violated due process.[8]

With regard to the issue of detention prior to his revocation hearing, Attorney Greenspan points out that the time between the preliminary hearing on March 17, 2023, and the violation hearing on May 26, 2023 was 70 days. Due process entitles parolees to the disposition of their parole violation charges within a reasonable period of time, *Morrisey v. Brewer*, 408 U.S. 471 (1972), and Pennsylvania has administratively codified this constitutional right by requiring a violation hearing to be held within 120 days after the preliminary hearing, *see* 37 Pa.Code § 71.2(10). Petitioner clearly received a timely revocation hearing.

Petitioner's next issue is that his actions did not constitute assaultive behavior and that the Board's decision failed to state what assaultive behavior he committed. By way of explanation, the petition for review cites the decision by federal authorities not to prosecute. Petitioner also asserts that the voicemail "only threaten[ed] legal action and filing complaints against judges who obstruct the

---

[8] Further, "an illegal detention does not, in and of itself, vitiate a subsequent recommitment, just as an illegal arrest or detention does not void a subsequent conviction." *Pickert v. Pa. Bd. of Prob. and Parole*, 514 A.2d 252, 253 (Pa. Cmwlth. 1986).

administration of justice in his case"; that the voicemail was "clearly not threatening"; and that the "conditional remark" directed to former President Biden was in the "whole context" of an email containing a link to a site where he read his petition to the United States Supreme Court. Pet. for Rev. ¶ 5.e. Petitioner asserts he was "crying for the [Supreme] Court to hear his petition and not truly threatening the President or anyone else." *Id.*

Attorney Greenspan argues that substantial evidence supported the Board's decision to revoke for failing to refrain from assaultive behavior and, therefore, to recommit Petitioner under Section 6137(h) of the Prisons and Parole Code (Parole Code), 61 Pa.C.S. § 6137(h) (relating to the power to recommit). We agree. The term assaultive behavior encompasses a broader category of actions than would the crime of assault. *Jackson v. Pa. Bd. of Prob. and Parole*, 885 A.2d 598, 601 (Pa. Cmwlth. 2005). Thus, actions that would not constitute a crime may nevertheless be sufficient grounds for revocation of parole.[9] *Id.* In the context of parole violations, assaultive behavior is defined under the ordinary dictionary definition of assault. *Moore v. Pa. Bd. of Prob. and Parole*, 505 A.2d 1355, 1367-68 (Pa. Cmwlth. 1986). In this case, that would include a "violent . . . verbal attack" and a "threat . . . to inflict . . . offensive . . . bodily harm on a person . . . that puts the person . . . in apprehension of such harm . . . ." *Id.* [quoting definition of "assault," Webster's Collegiate Dictionary, (11th ed. 2003)]. A threat to assassinate the sitting

---

[9] Section 6137(h) of the Prisons and Parole Code provides, in pertinent part, as follows:

> The board may, during the period for which an offender shall have been sentenced, recommit the offender, if paroled, for violation of the terms and conditions of his parole . . . .

61 Pa.C.S. § 6137(h)(1).

President, even conditional, constitutes "assaultive behavior."[10] *See Dunkleberger v. Pa. Bd. of Prob. and Parole*, 573 A.2d 1173, 1174 (Pa. Cmwlth. 1990) (conditional threat to kill girlfriend of offender constituted assaultive behavior).

Finally, Petitioner raises the claim that the Board "improperly rescinded [his] parole when he did not commit any disciplinary infraction involving assaultive behavior *after* the decision directing his automatic reparole." Pet. for Rev. at ¶ 5.h. (emphasis added). The decision to grant, rescind, or revoke parole is one purely of administrative, not judicial, discretion. *Johnson v. Pa. Bd. of Prob. and Parole*, 532 A.2d 50, 53 (Pa. Cmwlth. 1987). Where a prisoner is recommitted following a parole revocation hearing to serve backtime as a parole violator, the parolee loses his status

---

[10] The petition for review vaguely seeks to invoke a constitutional dimension to the claim that Petitioner did not engage in assaultive behavior by citation to *Counterman v. Colorado*, 600 U.S. 66 (2023). In *Counterman*, the Supreme Court held that to convict defendant under the Colorado stalking statute prohibiting communication causing serious emotional distress, the State not only had to show that a reasonable person would understand defendant's statements as threats, but also had to show awareness on his part that the statements could be understood that way in order to satisfy the recklessness *mens rea* required by the First Amendment. While this argument might be relevant to a criminal prosecution, the matter we are reviewing is a **parole revocation**. The standard in this matter is whether Petitioner has abided by the conditions of his parole. As the Supreme Court stated:

> [T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Parole arises after the end of the criminal prosecution, including imposition of sentence. Supervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive. Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.

*Morrisey v. Brewer*, 408 U.S. 471, 480 (1972) (citations omitted). A threat on the life of the President is clearly violative of the requirement that Petitioner refrain from assaultive behavior.

10

as a "parolee" and has no right to be automatically released on parole upon the expiration of the backtime mandated by the Board. *Id.* Furthermore, Section 6138(d)(5) of the Prisons and Parole Code provides that the time limits for automatic reparole after recommitment to an SCI "***shall not be applicable*** to an offender who [] committed a disciplinary infraction involving assaultive behavior." 61 Pa.C.S. § 6138(d)(5) (emphasis supplied). Here, as noted in Attorney Greenspan's letter, a misconduct report was issued on May 9, 2023, charging, *inter alia*, threatening behavior. Following a misconduct hearing in which Petitioner participated, Petitioner received 60 days of disciplinary custody. Petitioner does not deny this offense but rather argues that "any misconduct happened in May 2023 BEFORE the [revocation decision of June 6]." Admin. Remedies Form, rec'd July 6, 2023, C.R. at 138 (capitalization in original). While this infraction occurred before the violation hearing of May 26, Section 6138(d)(5) by its terms is not limited to offenders whose infractions postdate an order setting forth the conditions for automatic reparole.

In light of the foregoing, we grant Attorney Greenspan's application for leave to withdraw as counsel and dismiss Petitioner's petition for review.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ramsey Wesley Randall, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1085 C.D. 2023 |
| | : | |
| Pennsylvania Parole Board, | : | |
| Respondent | : | |

# **O R D E R**

**PER CURIAM**

AND NOW, this 11th day of December, 2025, Montgomery County Assistant Public Defender Dana E. Greenspan, Esquire's Application for Leave to Withdraw as Counsel is GRANTED, and Petitioner Ramsey Wesley Randall's Petition for Review is DISMISSED.